Appellant. Ms. Persico for the Appellant, Mr. Smith for the Appellee. Good morning, Your Honors. May it please the Court, Deborah Persico on behalf of the Appellant, Mark Adams. In this case, the central issue that the District Court had to decide was whether the Bureau of Prisons could adequately care for Mr. Adams, given his numerous criminal and numerous serious medical conditions. But by denying Mr. Adams' motion for a continuance and by limiting his cross-examination of the government witness, Dr. Allen, the District Court committed significant errors that resulted in an unreasonable sentence and made the waiver of appeal unenforceable. As to the continuance, our position is that the Court erred because it denied the Appellant an opportunity to present information that was directly relevant to the 3553A factors. Was your client immediately taken into custody after sentencing? No, I don't know exactly. So he still could have attended the March 29th doctor's appointment that you wanted the continuance for, is that correct? Well, I don't think that, respectfully, I don't think that's really a fair issue, because at that point, the Court had denied his motion, he had already been sentenced. Did he attend the doctor's appointment or not? Not that I know of. People would have independent reasons to go and determine whether they need a pancreas transplant, wouldn't they? You'd have an independent reason to go and determine if he needs a pancreas transplant, right? He's going to want to have his health taken care of. Yes, exactly. Well, and that was the reason that he wanted the continuance in the first place, so that he could have the evaluation before the sentencing. Not after the sentencing, but before the sentencing, actually have the evaluation so that the judge would have all of, not only the judge, but Dr. Allen would have all of that information at the time of sentencing. And the pancreas transplant was important. I know the government says that it wasn't that important, but it was, because if you look at the transcript of the sentencing hearing, even at the hearing, Dr. Allen mentioned that he did not have details about the pancreas transplant, and that as far as he knew, no inmate in the Bureau of Justice had ever had a pancreas transplant. Right, so you could have gone to the March 29th appointment. One, if you need a pancreas transplant, I think you would have independent reasons to want to go and protect your health that way. But two, then you could have gone back to the district court, or you at least would have been able to make a proffer as to what the consequences of the denial of the continuance were. As of now, how do we know there was any prejudice from this denial of a continuance? Well, I think that the court has to look at the point of the sentencing hearing, that it's not really fair to look after sentencing, because the sentencing was completed at that point. And before sentencing counsel... Is there no procedural capacity to go back to a district court and say, look, here's some new information, or at least provide it to the Bureau of Prisons so that they'll have that new information for purposes of taking care of your client? Well, there may be a provision for doing that, but I think that this court still has to look at what exactly the district court did before sentencing. I don't believe that this court can say, well, he could have gone for this evaluation after the sentencing. The point is that before the sentencing, counsel asked for a short continuance. The government doesn't disagree that this was not an extraordinary delay. They were not prejudiced by the short continuance. And therefore, the district court, in our position, erred by denying that continuance to get that specific information about the pancreas transplant, and not only about the pancreas transplant. Remember, Dr. Allen wanted the most recent evaluations, and he did not have those most recent evaluations for the transplants. And that was an important detail that not only he mentioned in his declaration, but again, he mentioned it at the sentencing hearing. So this was a consideration, and especially, in fact, the court, during the cross-examination of Dr. Allen, said to counsel, you know, move on from this idea of the pancreas transplant. I'm not interested in that because there's no information in the record about it. Well, there was no information in the record because the district court denied the opportunity for a very short continuance. What about in the five months before the sentencing hearing? Why couldn't there have been an evaluation in that time period? Okay. Well, first of all, I think that whole argument by the government is a red herring. Here's what happened. In the initial stages in January, the parties had a telephone conference with the district court. The district court tells the parties that she's considering a downward departure under the guidelines. Mr. Adams signs a waiver, turns it over to probation or to the government so that the government could get all of his medical records that were available as of that time, that the records were subpoenaed, they were made all available as of that time. And one important point here is that Mr. Adams did not create those records. Those records were created by the doctors, by the hospitals as of that particular time. So he turns over all of the information that was available. The government looks at that information. Dr. Allen looks at the information and comes back and says, wait a minute, hold the phone here. There's no specific detail about a pancreas transplant. We see that there's a reference for a, I mean, a referral for a pancreas transplant. But we don't have any specific information. We don't have information about other aspects of his medical care. And Dr. Allen then says in his affidavit, I can't make a recommendation for a specific treatment plan for Mr. Adams because I don't have all the details. Sure, but by the time of the hearing, Dr. Allen said he had sufficient information. Did he not? No. Well, all he had, he had obtained records that were available as of that date. But there was still missing the pancreas information. And that's exactly, and he says in his declaration, I don't have information about the pancreas transplant. Counsel files a motion for continuance. They schedule an appointment for 28 days, which the government agrees was, you know, they were not prejudiced by. I guess what I'm trying to get at is if someone needs a pancreas transplant, which is a pretty serious physical need, wholly apart from the sentencing proceeding, one would have every incentive to have that checked out well in advance of this whole process and to have determinations made not to have some question about it. And one would have had every incentive if I needed a pancreas transplant, regardless of whatever I got, whatever the sentencing downward variance was or not, to make that March 29th appointment and get the information about needing a pancreas transplant. Did he ever submit records to BOP showing that he does need a pancreas transplant? I mean, what is his status now? The status now, as of January 2nd, is that he has not yet even been evaluated by, I believe it was Beth Israel Hospital is the one that Dr. Allen said handles the transplants for the Devens facility. And it's our information that as of now, and we have not confirmed this, I believe trial counsel is working on confirming all of this, that he has not even been seen or evaluated yet for a transplant. But he skipped his March 29th appointment, or did he go to it? That I don't know. I honestly can't tell the court. I don't have that information, whether he kept the appointment or not. I don't know that. And how would you distinguish the, I'm not sure if I'm pronouncing it right, the Gielen case, Gielen or Gielen case, which specifically referenced ill health concerns as being insufficient type of concerns to overcome an appellate waiver. I mean, it specifically mentioned health concerns, and that was not enough to overcome a waiver. Why is this different? Well, first of all, the waiver is only valid if the sentencing procedures are fair. That's one thing that Gielen, I'm sorry, Gielen says, is that the sentence imposed must be imposed under fair standards. So then from there, you look at the denial of the continuance. And our position is that the denial of the continuance was significant error that made the procedures unfair because it denied the appellant the opportunity to provide information that was directly relevant to the question of his medical needs and whether the BOP could care for him. So that's how we get... I'm trying to figure out why that particular procedural error is going to constitute manifest injustice and every other continuance. Well... Because the continuance is always going to say it's relevant to the sentencing proceeding. We need it for a well-informed sentencing proceeding. Well, let me give you an example. Let's say Mr. Allen had the flu, and he said, I'd like a continuance because I want to get medical records from my doctor to show that I have the flu and I need the prescription of Tamiflu. So we need a continuance of the sentencing. That obviously is not sufficient to justify a motion for continuance in this case, where the issue is, can the BOP care for his very serious medical concerns? But when a person such as Mr. Adams, who has a plethora of serious medical conditions, says to the... And he gets this information from the government. I mean, this is the key too, is that he's responding to the government's claim that we see this information you've provided, but you haven't provided enough detail. It's at that point that he wants to get all of the details. And the other thing I forgot to mention that is in our briefs is that shortly before the sentencing, Mr. Adams was notified by Washington Hospital Center that they no longer did the joint transplants. And that is what prompted an additional appointment, in addition to the fact that he was responding to Dr. Allen's declaration saying, I don't have enough information to come up with a plan for him. I just have one last question, and that is, you objected to, or you expressed concern about the district court's comments during the sentencing hearing about move on, not wanting to hear about things. Did you object at the sentencing hearing to any of those? I don't think trial counsel objected to those. I believe when the court said move on, he moved on. Okay. Thank you. Okay. Thank you very much. Thank you. Unless you have other questions? No. Okay. Thank you. Good morning. May it please the court, Peter Smith on behalf of the United States. Appellant waived his sentencing claims in this case by virtue of his plea agreement with the government. And in any event, the court did not abuse its discretion in giving appellant a guidelines, a low-end guidelines range sentence. It's interesting that appellant's argument this morning starts with the issue, framing the issue as whether the BOP, the Bureau of Prisons could give appellant adequate medical care in this case. That question was conclusively resolved during the sentencing proceeding, and it was resolved in a way that supports the government. Dr. Allen testified at the sentencing proceeding at appendix page 200 that he had no doubt that BOP could handle or care for appellant and could handle all of his medical conditions. And the district court so found at appendix page 252. And this court owes deference to that factual finding made by the district court. Would a denial of a continuance ever constitute manifest injustice to overcome an appellant waiver? Or would procedural error in the sentencing ever? What is the right test to apply to determine that? Sure. In the Guillen case, the court indicated that a manifest injustice during sentencing could be something that would overcome an appellant waiver, as the court knows. The Guillen court gave a number of examples. I think it's undisputed those examples don't apply to this case. One of them, for example, is a sentence that's based upon someone's characteristics, for example, their race or their religion. And that is not applicable here. I suppose it would be possible for a continuance request to be manifest injustice, but I think that you would have to have constitutional error. And for that to occur, I think you would have to have, as the Supreme Court has said, something that was not only error, but that was material to the sentencing. So I think it would be a very unusual continuance request that would result in constitutional error and also be a manifest injustice. And you don't have that here, because at bottom of the government's argument is that the information that appellant says he was seeking at the time that he requested the continuance simply wasn't necessary to the district court's sentencing. That information didn't exist at the time appellant made his sentencing request. But to be clear, the U.S. position isn't that procedural error could never be manifest injustice. Or continuance could never be, but it's just not in this case. It's certainly not in this case. It doesn't even come close. And I think it would be a rare case where that sort of garden, you know, I'm not speaking correctly. It wouldn't be a garden variety error that would result in manifest injustice. It would have to be an extreme error. Manifest injustice has been described in other contexts, in the plain error context, as being, you know, very significant. And to me, there's Supreme Court authority that indicates that a due process violation during sentencing would occur, for example, when a number of situations all happen together. And that would be that the district court, for example, relied on wrong information, that it actually relied on it, and that it was material to that defendant's sentencing. And you don't have that in this situation. And even then, it's not clear that would be a manifest injustice. I think it could be, but it's not necessarily one. And you don't have any of those things here. Now, some courts of appeals have taken different approaches to determining manifest injustice. This one court has said, essentially looked at the fourth prong of plain error for the type of threat to the integrity and fairness of the process. Others have been a bit more open-ended than that. Is it your position that essentially the fourth prong of plain error is the right measure for all errors, or at least procedural errors? Or I'm just trying to figure out what the right test is here, legal test is. Yeah, I think that when this court referred to manifest injustice in the Guillen opinion, I think it probably had in mind something along the lines of the third and fourth prongs of the plain error test, because that's exactly the same language that's used there. But, you know, other courts have described it differently. I would say that in the sentencing context, in order to avoid the problem that was raised earlier, that the court suggested that, and it can't be that any garden variety error at sentencing is a manifest injustice. Otherwise, every defendant would be entitled to get out of the bargain that he or she made with the government in their plea agreement. And one of the reasons that this court should apply the plea waiver is because there are cases where this court has not applied a waiver provision. But in each of those cases, the waiver has been either unequivocal in writing or during the sentencing proceeding the district court has made some sort of comment that was in tension with the plea waiver. And you don't have that here. Appellant hasn't made that argument. The only argument is that the error was so serious that it should overcome the appeal waiver. So you don't have the situation you had in other cases like Accardi, where the district court said something to appellant, for example. You know, you will, of course, be able to appeal your sentence, which is in tension with the written plea agreement. So the court ought to enforce it. But even if it doesn't enforce the waiver agreement, which it should, there was no error, so there's no reason for any sort of relief. The continuance request was made only two or three days before sentencing. It was February 27th. Sentencing was scheduled for March 1st. Appellant made a number of factual arguments, which we disagree with. One of those factual arguments this morning was that he had just learned from the Washington Hospital Center that he was not on a pancreas transplant list. On January 7th, the district court held a telephonic status hearing. Defense counsel said at that time that he understood that appellant was not on a list for a pancreas transplant. Not only did counsel and appellant have the five months between the execution of his plea agreement with the government in October 2012 until the sentencing proceeding in March 2013. That's approximately five months. But he certainly had from January 7th on to schedule his appointment and gather any information he felt was necessary, because counsel knew at that time that appellant was not on any kind of transplant list for a pancreas. And at bottom, our argument, again, on the continuance request and as to the underlying merits of the claim, is simply that that information was unnecessary anyway. Appellant hadn't met with anyone, so the information he was seeking didn't yet exist. And there was no reason in the record, and there was no indication, there was no reason given to the district court, that appellant couldn't either receive good medical care at the Bureau of Prisons or obtain or have a referral or have a consultation for a pancreas transplant while in BOP care. Why did you all oppose the continuance request? As you conceded, there was no prejudice to you, there's no dispute that it was a short period of time and it was at least to acquire information that I should think BOP would want to have in determining how they're going to care for this inmate. Well, for some of the reasons that I suggested before, I mean, there's got to be an end point at which a defendant can't continue to request a continuance of sentencing. At some point, it becomes foot-dragging. And our response was, based upon some of the things we said, that appellant's request had to do with information that he wanted to obtain in the future. And it seemed to us at the time that he could obtain that information just at BOP while in BOP custody, just as he could as a private citizen outside of BOP care, because the information didn't yet exist. It wasn't that he was saying, look, there's information, district court, you ought to consider it, and I have it, I just need to get it. That wasn't the situation. He had appointments scheduled for the future, and he could certainly do that at BOP. So that information was not necessary to the sentencing proceeding itself. The district court found on the basis of two declarations and in-court testimony, which spanned, you know, well more than 40 pages, from Dr. Allen, that BOP could adequately care for appellant's medical conditions. And the district court made a factual finding along those lines to which this court owes deference. Part of Dr. Allen's testimony was that the pancreas transplant, which is really what appellant is focusing on in his argument on appeal, that that was one treatment modality for diabetes. And Dr. Allen testified at length that BOP could adequately treat appellant's diabetes, that appellant could be treated for his renal failure through dialysis, and also that appellant could receive a kidney transplant while in the New England area, that in some ways that BOP medical care would actually benefit or at least possibly benefit appellant because he wouldn't have the issue he raised at sentencing of his insurance. Dr. Allen indicated that some of the transplants appellant was requesting or wanting were not potentially were elective and potentially wouldn't be paid for by his insurance, but BOP would be able to provide that. And Dr. Allen also testified that the weight for an organ transplant in the Boston region is less than in the Washington region. So appellant wouldn't be any worse off were he to be in BOP custody. And that was the information that the district court had. And therefore, the district court properly sentenced appellant on that basis. Thank you. There are no further questions. Thank you. Did counsel have any more time? No. Okay. You can take one minute if you like. Thank you very much. Well, first, very quickly then, Mr. Smith said that the issue of whether BOP could care for Mr. Adams was resolved. But if you look at the record, both the declaration and Dr. Allen's testimony, he speaks in non sequiturs. He starts in his first breath by saying, I don't have enough information to come up with a specific plan for Mr. Adams. And then in the next breath, he says, but the BOP can adequately care for him. So the question the district court should have asked, and this court can rightfully ask, is how can the BOP adequately care for someone when the doctor is admitting that he does not have enough information to come up with a plan for Mr. Adams? The second point I'll make quickly is that we have argued not simply a denial of a continuance, but that that denial amounted to the denial of right to counsel. And that type of situation is what justifies making the waiver unenforceable. Ms. Proceco, I think you were appointed by the court to represent Mr. Adams. Your colleague was, right? Yes, and I'm doing it pro bono. Yes, I know you are, and we appreciate your assistance. Thank you. Thank you very much. Thank you.
judges: Tatel, Millett, Ginsburg